## ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

SOLOMON BANEWUR & another *vs.* JOHN LEVENSON.

Suffolk.    March 24, 25, 1897. — April 12, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Breach of Contract to loan Money — Damages.*

At the trial of an action to recover damages for breach of an agreement to pay the plaintiffs' debts and relieve their property from attachment, there was evidence tending to show that the plaintiffs, who were copartners and owing $2,400 which they were unable to pay, had a stock in trade subject to a mortgage and under attachment; that most of their creditors were willing to release them from their debts upon receiving 33⅓ per cent of their claims; that, a disagreement having arisen between the plaintiffs, friends were called in, including the defendant, who arranged in writing a plan of settlement which stipulated certain things that the plaintiffs and the defendant respectively should do, and which was assented to by the plaintiffs and signed both by them and by the defendant; that thereupon the defendant orally agreed to furnish $800 for settlement with the plaintiffs' creditors and $100 for expenses, in return for which he was, upon the release of the attachments, to have possession of the plaintiffs' stock of goods until he should be reimbursed the sum of $900 and be paid $100 for his services; that soon after this agreement the defendant gave to the plaintiffs' first attaching creditor his covenant to pay all the plaintiffs' creditors the percentage of their respective claims and the legal expenses, that some weeks later the plaintiffs and the defendant signed an indenture, under seal, in which the plaintiffs were party of the first part, the defendant party of the second part,

and the creditors party of the third part, purporting to convey all the plaintiffs' property to the defendant, in trust to reduce it to money, pay preferred claims and distribute the rest ratably among the creditors, and to release the plaintiffs from their debts, but no creditor ever assented to it; that thereafter the defendant, although he furnished no money to pay the plaintiffs' creditors and paid none of their debts, took from the mortgage an assignment of the mortgage of the plaintiffs' goods, replevied them from the attaching officer, and refused to restore them to the plaintiffs; and that he was not prevented from performing his agreement by reason of the refusal of any creditor to accept the percentage. *Held*, that there was evidence sufficient to justify a finding that the defendant made an oral contract with the plaintiffs; that the terms thereof might be found outside the written plan of settlement; that it was not rescinded by the tripartite indenture; that the fact that the defendant in his replevin suit was adjudged to return the goods to the attaching officer was not a defence to this action and could not be considered in reduction of damages; and that (FIELD, C. J., HOLMES & LATHROP, JJ., dissenting) the plaintiffs were entitled to recover the loss sustained by the failure of the defendant to extinguish their debt of $2,400 at a cost to them of $1,000, but not for his dealings with their goods, possession of which he obtained outside the contract.

CONTRACT, for breach of an agreement to extinguish the plaintiffs' debts and to relieve their goods from attachment, and tort for the conversion of certain articles belonging to the plaintiffs' stock in trade. Writ dated June 19, 1894.

The declaration annexed to the defendant's bill of exceptions was substituted for the original declaration, and alleged that prior to November, 1892, the plaintiffs, Solomon Banewur and Aaron Waterman, were copartners in the clothing business, having a stock in trade of the value of $4,000; that they were then indebted to the amount of about $2,200, and that they were unable to meet said obligations; that on or about November 17, 1892, one of said creditors caused an attachment of the plaintiffs' goods and fixtures to be made; that the plaintiffs, being unable to procure funds necessary to settle with their creditors, for the purpose of dissolving said attachment and paying all their creditors " entered into a certain agreement with the defendant, whereby the defendant agreed with the plaintiffs that, if the plaintiffs would convey to him, the defendant, all their right, title, and interest in and to said stock of goods and fixtures, he, the defendant, would thereupon immediately raise a sum of money, not exceeding eight hundred dollars ($800), to pay the said attaching creditor and discharge said attachment, and would thereafter assume to pay and would pay immediately as soon as might be to the remaining creditors the respective debts of the

plaintiffs to each of said creditors, and after deducting the sum of two hundred dollars ($200) for his own services and disbursements, that he, the defendant, would then pay to the plaintiffs in equal parts, share and share alike, the balance of the proceeds of said goods; that the plaintiffs thereupon did convey unto the defendant all their right, title, and interest in and to said stock of goods and fixtures, which stock of goods and fixtures he had received; but the defendant has utterly failed to keep his part of said agreement, to wit, in that he, the defendant, has failed to pay any of the creditors of the plaintiffs, and has failed to account to or pay over to the plaintiffs any sum or sums of money due to them."

This declaration was subsequently amended by the addition of a second and third count. The second count was as follows:

" Prior to the 17th day of November, 1892, the plaintiffs had been copartners carrying on the business of clothing and dry goods dealers under the firm name of the Columbia Supply Company at Canton, Massachusetts. On said 17th day of November their stock of goods and fixtures were attached upon a writ against them in favor of Charles Green and Company, who were creditors of the plaintiffs to the amount of about six hundred dollars ($600), on which writ a deputy sheriff took and held all of said plaintiffs' goods and fixtures. The plaintiffs were without ready funds to liquidate the claim upon which said attachment was made, and were unable to meet other obligations which had matured and were maturing. Thereupon, by advice of the defendant, the plaintiffs procured from all their creditors an oral agreement to accept $33\frac{1}{3}$ per centum of their respective claims against the plaintiffs in full settlement and discharge thereof; that the sum of money required to effect said settlement with creditors was about eight hundred dollars ($800); in order to raise said $800 immediately for the purpose of settlement with creditors the plaintiffs entered into a certain agreement with the defendant whereby the defendant agreed with the plaintiffs that he would advance to them, the plaintiffs, or on their account, the sum of $800 for the purpose of settlement with all the creditors, thereby securing the dissolution of the attachment already on said goods, and the full and complete discharge of the plaintiffs from their said debts; that the defendant should then receive

said goods discharged from attachment as aforesaid, and hold the same in pledge to secure the repayment to him by the plaintiffs of said sum of $800, and an additional sum of $200, and that he, the defendant, would not proceed to sell the same without the consent of the plaintiffs, and would give the plaintiffs reasonable opportunity to redeem the same; that after payment to him by the plaintiffs of said $1,000 he would return to the plaintiffs said goods and fixtures; the plaintiffs agreed that the defendant should advance the sums aforesaid for the purposes aforesaid, and that the defendant thereafter should hold said goods in pledge as security for the repayment to him of said aggregate sum of $1,000; but the defendant has utterly failed to keep his part of said agreement, to wit, he has utterly failed to advance said sum of $800 or to pay any of the creditors of the plaintiffs the stipulated dividend of $33\frac{1}{3}$ per cent, or any part thereof, and has failed to release said attachment of Green and Company by the payment of the percentage of the debt as agreed, and has failed to keep in his possession or to turn over to the plaintiffs said stock of goods and fixtures, or any part thereof; but has converted the same to his own use. Whereby the plaintiffs have been greatly damaged to the extent of the value of their said goods and fixtures, and have otherwise been greatly damaged."

The third count was for the conversion of the plaintiffs' stock in trade. Answer, a general denial.

The case was referred to an auditor, who found that on November 4, 1892, the plaintiffs made a mortgage of all their goods and chattels to one Woronoff for $2,000, without consideration, for the purpose of deterring their creditors from attaching them; that on November 17, 1892, their goods were attached; that thereafter the defendant agreed to pay to the plaintiffs' creditors, and the creditors agreed to accept, the sum of $33\frac{1}{3}$ cents on a dollar on their debts, in satisfaction of their respective claims; that the defendant further agreed with the plaintiffs to hold their goods as security for the money he should advance and pay to their creditors, and for the incidental expenses thereof, until he should be reimbursed by the plaintiffs, whereupon the goods should be returned to them; that, at the request of the defendant, the plaintiffs caused their mortgage

to Woronoff to be assigned to the defendant; that on April 15, 1893, the defendant, not having paid or tendered to the plaintiffs' creditors the percentage they had agreed to accept, and while the plaintiffs' goods were under attachment, brought a writ of replevin against the attaching officer, and removed them to his store in Boston, and, although prior to the commencement of this action judgment had been rendered in favor of the defendant in the replevin suit, the defendant refused to deliver the goods to the plaintiffs or to pay to their creditors the percentage as agreed; and that the defendant owed the plaintiffs the sum of $3,117.26 and interest.

Trial in the Superior Court, before *Dewey,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiffs offered evidence tending to show that, on or about the 4th day of November, 1892, they had contracted an indebtedness amounting to about $2,400, and that among their creditors they owed the defendant for goods purchased of him; that they gave a mortgage of $2,000 upon their stock of goods, without consideration, to one Woronoff; that on November 17, 1892, their goods were attached by Charles Green and Company, and subsequently by various other creditors, whereupon the plaintiffs obtained from the majority of such creditors an agreement to accept 33⅓ cents on the dollar of their respective claims; that, a disagreement arising between the plaintiffs, the matters in controversy were referred to five friends, of whom the defendant was one, who decided in writing that " all the creditors should be settled, and after subtracting the amount to be paid out, the surplus should be divided into two equal parts between Banewur and Waterman. Mr. Levenson undertakes to furnish $800. The goods of Banewur and Waterman, Mr. Levenson should take. But if Banewur should want to take the aforesaid goods, he may have it by paying to Levenson 75 per cent of its value. Waterman was to take the goods by paying full value. Levenson is to get $100 for his services in settling the estate, $100 for his probable expenses. As soon as Levenson receives the goods from Banewur and Waterman he must divide it into two equal parts, and Banewur may redeem his half and Waterman his half. Waterman is to pay full value in redeeming goods. The expenses to be paid by Banewur and Waterman equally. Leven-

son must get amount due him in full "; — that this writing was assented to by the plaintiffs, and signed both by them and by the defendant, and thereupon the defendant stated orally that he would furnish the necessary $800 for settlement with the creditors; that subsequently, no settlement having been made with the creditors under the oral agreement the defendant gave to Charles Green, the first attaching creditor, his covenant to pay each of the plaintiffs' creditors the percentage of his claim and his legal expenses, and all but three of the plaintiffs' creditors gave their covenant to the defendant to accept such percentage in settlement of their claims; that the defendant made no settlement with the creditors under the composition agreement, but on Feburary 20, 1893, he took from Woronoff an assignment of the plaintiffs' mortgage.

The defendant testified that he bought the Woronoff mortgage and took an assignment of it to himself, and that he was informed by the plaintiffs and the mortgagee that it was a good mortgage; but the plaintiffs testified that the defendant was informed that the mortgage was without consideration, was invalid, and was to be discharged. Evidence was also introduced tending to show that on February 24, 1893, the plaintiffs and the defendant signed an indenture under seal of three parts, in which the plaintiffs were the party of the first part, the defendant was the party of the second part, and the creditors were the party of the third part, purporting to convey all the plaintiffs' property to the defendant in trust to reduce it to money, pay the preferred claims, distribute the rest ratably among the creditors, and release the plaintiffs from their debts, but no creditor signed this indenture; that on April 15, 1893, the defendant replevied the plaintiffs' goods from the attaching officer, and although in October, 1894, he was adjudged to return the goods, he refused so to do, and at the commencement of this action an action was pending against him on his replevin bond, to recover the value of the goods. Evidence was also introduced in support of the count for conversion, but the judge ruled that the plaintiffs could not recover thereon.

At the close of the evidence the defendant requested the judge to rule: 1. that upon all the evidence the plaintiffs cannot recover; 2. that the plaintiffs cannot set up or in any way

avail themselves of the invalidity of the mortgage, although it might be avoided by their creditors; 3. that, the mortgage being valid and undischarged, the plaintiffs cannot maintain an action for the conversion of the goods covered by it; 4. that the plaintiffs cannot maintain this action by reason of the alleged failure of the defendant to execute the trust by settling with their creditors, but that their remedy, if any, is in equity, to compel the execution of the trust; 5. that the plaintiffs have shown no title to the goods, and cannot maintain an action for their conversion; 6. that if the jury find the defendant has become liable to the attaching officer by reason of the judgment against him in the action of replevin, the amount of such liability is to be allowed in reduction of damages in this action; 7. that it appearing that the trust is not settled, and that the plaintiffs' action is not brought for the purpose of repudiating it, the action cannot be maintained; 8. that if the plaintiffs' contention is true, that the defendant agreed to settle with their creditors, and he received the property for such purpose, then the defendant is liable to each of said creditors, and the amount for which he is so liable should be allowed in reduction of damages; 9. that if the jury find that the assignment of the plaintiffs' property was made to the defendant for the benefit of their creditors, oral evidence is inadmissible to vary its terms, and the rights of the parties must be determined by the assignment itself.

The judge declined to rule in terms as requested, and instructed the jury, in substance, that if, as the plaintiffs testified, when they gave a mortgage and note for $2,000 to Woronoff it was without consideration, because they owed him nothing and he paid nothing, and that it was made to prevent creditors from attaching their property, then, as matter of law, the mortgagee could not enforce the mortgage; that the plaintiffs testified that the defendant made a contract with them which is the basis of this action, by which he agreed to furnish $800 to be used in the settlement of their debts, amounting, as it is estimated, to $2,400; that it was a part of the contract that the defendant should receive $100 for his services and $100 more for his expenses, and that when he had furnished the money, settled the debts, and released the attachments, he was to hold the goods as security for his reimbursement of $1,000; that in this transaction

the defendant assumed to stand in the attitude of a friend, and in this agreement or arrangement which they say they made, it is not claimed that Levenson took upon himself the responsibility of prevailing upon the creditors to settle for $33\frac{1}{3}$ per cent. The arrangement with him went along upon the assumption that the creditors were willing; the plaintiffs claimed that the creditors had all been seen, and had expressed their willingness, and that most of them, if not all, had signed a paper to that effect, which has been put in evidence; and it is not claimed that Levenson undertook that the creditors should be willing to take $33\frac{1}{3}$ cents. He left that for the plaintiffs, but he undertook to pay them $33\frac{1}{3}$ per cent upon the assumption that they, the creditors, were and would be willing to take it And so the plaintiffs, if they have a case against Levenson, have upon them the duty of satisfying the jury that, as matter of fact, the creditors were willing to take the $33\frac{1}{3}$ per cent, and that no obstacle, serious obstacle, existed on that score, and to the settlement being made in the manner proposed. The plaintiffs say that was the condition of things: " We found our creditors willing to assent, we had had the advice of our friends that that was a proper settlement to make; Levenson agreed with us to furnish the money, $800, to settle with the creditors, and thereupon take our property into his hands and hold it as security for the $800 which he advanced, for the $100 which he was to receive for his compensation, and for the $100 which was reckoned as probable or as to be incurred in the way of costs." They must satisfy the jury, by the preponderance of the evidence, that such a state of things existed. The judge then further instructed the jury, that, if the defendant's failure or omission within a reasonable time to carry out his contract was caused by the refusal of the creditors to accept the percentage, that would constitute a defence; that the defendant relied upon the assignment of the mortgage, and contended that the plaintiffs could not maintain the action for not returning the property because he held an assignment of their mortgage; that the plaintiffs contended that the mortgage was originally without consideration, which the defendant knew when he took it; that if the facts were as stated by the plaintiffs, the mortgage was invalid and could not be relied upon by the defendant, but if it was valid he could

rely upon it as a ground for refusing to hand back the property to the plaintiffs; that the assignment for the benefit of creditors, which was intended to be a tripartite instrument, which was signed only by the plaintiffs and the defendant, but was not signed or assented to by any of the creditors, could not be relied upon in defence as superseding his oral agreement; and that the replevin suit brought by the defendant did not constitute any defence to this action. The judge then said, in substance: "Now if under these simple instructions you find the plaintiffs entitled to recover on the count in contract, what are the damages? Well, the plaintiffs say that they were in debt $2,400, that Levenson was to pay one third of it, by which that would have been settled, and that they were to pay him in addition to their debts $200; so that this settlement, if it had been carried out by Levenson, would have cost them ultimately $1,000, and by an outlay of $1,000 they would have wiped out $2,400 of debts, so that there they lost $1,400. And they say that they would have had back their property besides, and they have lost whatever those goods were worth. . I do not see but that is a fair statement of the rule of damages, provided the plaintiffs are entitled to recover, with an exception or two to which I am going to allude. Of course you have got to determine the value of the goods upon the evidence. Levenson says, 'Even if I am liable to the plaintiffs for these goods, I am not liable for their full value, for Waterman has had $450 worth of the goods, and I ought not to be held liable to him and his partner over again for goods which they have had and carried off.' Well, that is true if they took the goods in a certain way, as for instance if they went to the defendant's premises without his knowledge and took off $450 worth of these goods, or if, recognizing that Waterman had some interest in the goods under the written plan of settlement, he allowed him to have that amount of the goods as one of the original part owners, and not upon terms of payment to him, then he would not, if liable at all, be liable for the value of those goods; but if, on the contrary, he merely made a sale of them to Waterman, he could not rely upon that in reduction of damages, because that was an independent matter which he must settle with Waterman alone. If Levenson took the goods and did not return them when he ought to, he would be

liable for nominal damages, and if the goods went to either of the plaintiffs by their action, and not by contract of sale, he would be liable merely for nominal damages."

The judge submitted to the jury the following questions: " 1. Did the defendant enter into a contract with the plaintiffs whereby he agreed to furnish money to the extent of $800 for settlement with the plaintiffs' creditors, and a further sum of $100 for expenses of said settlement? 2. Was the defendant unable to carry out such settlement by reason of the refusal of the creditors of the plaintiffs, or any of them, to accept a dividend of 33⅓ per cent?" The first question was answered in the affirmative, and the second in the negative.

The jury on October 19, 1896, returned the following verdict: " The jury find for the plaintiffs, and assess damages in the sum of $1,500, and interest to date, $315.10, making $1,815.10 "; and the defendant alleged exceptions.

The case was argued at the bar in March, 1897, and afterwards was submitted on briefs to all the justices.

*J. E. Young & P. H. Cooney*, for the defendant.

*S. L. Whipple,. (J. Bon* with him,) for the plaintiffs.

BARKER, J.   The exceptions relating to the count in tort are now immaterial.   The verdict is upon a count in contract not set out in the bill of exceptions, but a copy of which is with the record transmitted to the Chief Justice.   The defendant contends that the case should not have been left to the jury, and that the instructions given as to the different defences and as to the measure of damages were wrong.

The case seems to have been submitted to the jury by the presiding justice, with the assent of both parties, upon issues not strictly defined by the pleadings, and we consider the questions raised as if the pleadings, which had been repeatedly amended, presented the issues which the presiding justice in his charge directed the jury to try and to decide, the arguments in this court having been upon the issue so raised.   In the course of the charge the real issue upon which the jury were to pass was thus stated by the presiding justice : " The plaintiffs say that was the condition of things : ' We found our creditors willing to assent, we had had the advice of our friends that that was a proper settlement to make; Mr. Levenson agreed with us to

furnish the money, $800, to settle with the creditors, and thereupon take our property into his hands and hold it as security for the $800 which he advanced, for the $100 which he was to receive for his compensation, and for the $100 which was reckoned as probable or as to be incurred in the way of costs.' Now, they must satisfy you, of course, by the preponderance of the evidence, that such a state of things existed."

The plaintiffs contend that their case is this. They were dealers having a stock of goods and owing $2,400 which they could not pay. Creditors had sued, and the stock of goods was in possession of an officer under attachments. All the creditors were willing to take off the attachments and to release the plaintiffs from the debts upon receiving 33⅓ per cent of their claims. Thereupon the defendant orally agreed with the plaintiffs to furnish $800 and a further sum of $100 for expenses, and with this sum to extinguish the plaintiffs' debts ; and for his services he was to have another $100. Upon the release of the attachments he was to have possession of the stock of goods until he should be reimbursed and paid the sum of $1,000, made up as stated.

The defendant has furnished no money, and has paid none of the debts, but has got possession of the stock of goods, and has refused to restore them to the plaintiffs. The defendant was not prevented from performing his agreement by the refusal of any creditor to accept the percentage. The verdict founded upon this contract and its breach was rendered under instructions which allowed the jury to give damages because the plaintiffs' debts of $2,400 were not extinguished at a cost to them of $1,000, and for loss upon the stock of goods which the defendant got possession of by other means than through the performance of his contract.

1. The first contention now made by the defendant, in support of his exceptions, is that there was no evidence of a contract between the plaintiffs and the defendant, and that the only contract which he made was with the creditors.

The evidence tended to show that the first attachment was made on November 17, 1892, and that other creditors made successive attachments, whereupon the plaintiffs visited their creditors and secured from most of them an agreement to

accept the 33⅓ per cent. After this there was a disagreement between the plaintiffs, and friends were called in, who made a written statement communicated to and signed by each of the plaintiffs. This statement contained several particulars as to what the defendant was to do, and he was one of the persons who signed it, and when it was communicated to and assented to by the plaintiffs he stated orally that he would furnish the $800 for settlement with the creditors; and not long after he gave to the first attaching creditor his covenant to pay each of the plaintiffs' creditors the percentage of their respective claims and the legal expenses. This evidence, with the auditor's report, was enough to justify the finding that the defendant did make an oral contract with the plaintiffs. It was natural for him to agree with the creditors to pay them their percentages and expenses after he had made that agreement with the plaintiffs.

2. The defendant next contends that, if there was a contract between himself and the plaintiffs, its terms must be found in the statement of the friends who were called in as before stated, and that the delivery of the stock of goods to him was a condition precedent which was to be performed by the plaintiffs, and which precludes their recovery. But the terms of the contract might be found outside of the writing.

3. The defendant also contends that the plaintiffs cannot recover upon the oral contract, because it has been abandoned and rescinded by the parties. Such a defence must be established by proof, and the burden of proving it is upon the defendant. The evidence tended to show that, some weeks after the defendant had covenanted to pay the creditors their percentages and legal expenses, the plaintiffs and the defendant signed an indenture under seal, of three parts, in which the plaintiffs were the party of the first part, the defendant was the party of the second part, and the creditors were the party of the third part, but no creditor ever assented to it. This indenture purported to convey all the plaintiffs' property to the defendant, in trust to reduce it to money, and to pay preferred claims and distribute the rest ratably among the creditors, and to release the plaintiffs from their debts.

The presiding justice ruled that this indenture could not be relied upon as a defence, because, never having become complete

by the signatures of the creditors, it remained inchoate and of no effect. We think this ruling right. As presented at the trial, the question was not whether the jury might infer, from the execution of the indenture by the plaintiffs and the defendant, an actual previous abandonment and rescission of the previous oral agreement, but whether the indenture itself in the condition in which it was put in evidence, unexecuted by the creditors, worked such a rescission, and it did not.

4. The defendant further contends that a suit in which he has replevied the goods from the attaching officer, and has been adjudged to return them, is a defence. We cannot see that these transactions bar the plaintiffs' action for breach of the defendant's contract. He, and not the plaintiffs, was to procure the release of the goods; the plaintiffs were not to deliver them to him. That he has chosen another course, which is in violation of his contract, and has placed him under obligations to third persons, is not a defence to the plaintiffs' action for his breach of his contract with them.

Nor do we see how the fact that the defendant has made himself liable to the attaching officer in damages for the failure to return the goods to the officer upon the judgment for a return could be considered in reduction of damages in the present suit. If a possible problematical future result of the wrong which the defendant did to the attaching officer in replevying the property, when the latter was entitled to its possession, may be the payment of some debt of the plaintiffs, the defendant cannot offset that contingent future benefit against the damages caused to them by his own breach of contract. It is wholly problematical whether such a result will ever follow.

5. The final contention of the defendant is that the plaintiffs cannot recover the whole amount that they expected to gain by the contract, unless they can show that, after the defendant neglected to furnish the money, they used diligence in trying to get it elsewhere. If the contract had been merely to furnish them with $800 as a loan, damages for the loss which the plaintiffs suffered in not having their debts cancelled and discharged would have been too remote. But the contract which the plaintiffs asked the jury to find was not a contract to lend them money, but that the defendant would himself apply his own money in a

certain way, and so release their property from attachment and themselves from debts of three times the amount of the money to be used. The breach of the contract was not in a failure to lend to the plaintiffs $800, but in the failure to extinguish for them debts to the amount of $2,400, and to relieve their goods from attachment. Having made that bargain with him, they were not required, in order to recover damages for its breach, to prove that they tried to procure some one else to stand in his shoes. No such question seems to have been raised at the trial, and the question what would be the measure of damages for breach of a contract to lend money is not open.

But we are of opinion that there was an error in the instructions upon the question of damages. It appears, from the bill of exceptions and the finding of the jury, that no part of this contract between the plaintiffs and the defendant was ever performed. The plaintiffs' case was finally allowed to stand only upon the count in contract, and the jury were not permitted to consider the count in tort for a conversion of the goods. The defendant would be accountable for goods under his contract only if he received them under the contract. The instructions to the jury, as well as the facts set out in the bill of exceptions, tend to show that he never received or held them under the contract, but that he obtained them under a title adverse to the plaintiffs, and held them as an assignee of the mortgage, and replevied them, claiming under that title. If the contract was never executed by either party in respect to the possession or ownership of the goods, and if the defendant never received or held them under the contract, the plaintiffs cannot recover any part of their value under this count for a breach of the contract, but must seek otherwise their remedy for the defendant's interference with their property.

If the defendant had held the goods under the contract, the plaintiffs might have recovered not only the difference between the amount which it would have cost them to pay their debts if he had performed his promise and the amount of the debts for which they were left liable, but also the excess of value of the goods, if any, above the sum which under the contract they would have been obliged to pay the defendant to redeem them. But upon the case as it appears, the plaintiffs' damages should have

been limited to the difference between the whole amount of debts which the defendant was to discharge and the sum which the defendant was to pay the creditors, and which the plaintiffs were to repay him to redeem the goods. This difference was stated by the judge in his charge to be $1,400, and does not seem to have been in dispute. We can safely assume that this sum, with interest from the time of the transaction in February, 1893, was awarded by the jury as a part of their verdict for damages. The excess above this they must have allowed on account of the goods.

The decision of the majority of the court is, that, if the plaintiffs elect to remit in the Superior Court so much of the verdict as is in excess of $1,400 and interest from February 3, 1893, a new trial will not be necessary. Otherwise the entry must be

*Exceptions sustained.*

FIELD, C. J. I am unable to assent to the opinion of the majority of the court. If this case had been tried, as the exceptions state, upon the amended or substituted count in contract which is annexed to the exceptions, it is plain that the evidence would not support the count. It is alleged in that count that the plaintiffs " entered into a certain agreement with the defendant, whereby the defendant agreed with the plaintiffs that, if the plaintiffs would convey to him, the defendant, all their right, title, and interest in and to said stock of goods and fixtures, he, the defendant, would thereupon immediately raise a sum of money, not exceeding eight hundred dollars ($800), to pay the said attaching creditor and discharge said attachment, and would thereafter assume to pay and would pay immediately as soon as might be to the remaining creditors the respective debts of the plaintiffs to each of said creditors, and after deducting the sum of two hundred dollars ($200) for his own services and disbursements, that he, the defendant, would then pay to the plaintiffs in equal parts, share and share alike, the balance of the proceeds of said goods ; that the plaintiffs thereupon did convey unto the defendant all their right, title, and interest in and to said stock of goods and fixtures, which stock of goods and fixtures he had received." There was no evidence that the plaintiffs conveyed to the defendant all their right, title, and

interest in their stock of goods. It is true that the stock of goods was under attachments, and that the plaintiffs had given a mortgage upon the stock for $2,000 to one Woronoff, which they say was without consideration, and was given by them in order to prevent attachments, but they still could have conveyed to the defendant all their right, title, and interest in the stock, subject to the attachments and to the mortgage, if that had any validity. As the plaintiffs did not do this, they proved no cause of action under this count.

It was said by the plaintiffs' counsel at the argument, and, as I understand, it was conceded, that the case actually was tried upon an amendment to this count, and such an amendment appears in the copy of the pleadings. That amendment is as follows :

"Second Count. Prior to the 17th day of November, 1892, the plaintiffs had been copartners carrying on the business of clothing and dry goods dealers under the firm name of the Columbia Supply Company at Canton, Massachusetts. On said 17th day of November their stock of goods and fixtures were attached upon a writ against them in favor of Charles Green and Company, who were creditors of the plaintiffs to the amount of about six hundred dollars ($600), on which writ a deputy sheriff took and held all of said plaintiffs' goods and fixtures. The plaintiffs were without ready funds to liquidate the claim upon which said attachment was made, and were unable to meet other obligations which had matured and were maturing. Thereupon, by advice of the defendant, the plaintiffs procured from all their creditors an oral agreement to accept $33\frac{1}{3}$ per centum of their respective claims against the plaintiffs in full settlement and discharge thereof ; that the sum of money required to effect said settlement with creditors was about eight hundred dollars ($800); in order to raise said $800 immediately for the purpose of settlement with creditors the plaintiffs entered into a certain agreement with the defendant whereby the defendant agreed with the plaintiffs that he would advance to them, the plaintiffs, or on their account, the sum of $800 for the purpose of settlement with all the creditors, thereby securing the dissolution of the attachment already on said goods, and the full and complete discharge of the plaintiffs from their said debts;

that the defendant should then receive said goods discharged from attachment as aforesaid, and hold the same in pledge to secure the repayment to him by the plaintiffs of said sum of $800, and an additional sum of $200, and that he, the defendant, would not proceed to sell the same without the consent of the plaintiffs, and would give the plaintiffs reasonable opportunity to redeem the same; that after payment to him by the plaintiffs of said $1,000 he would return to the plaintiffs said goods and fixtures; the plaintiffs agreed that the defendant should advance the sums aforesaid for the purposes aforesaid, and that the defendant thereafter should hold said goods in pledge as security for the repayment to him of said aggregate sum of $1,000; but the defendant has utterly failed to keep his part of said agreement, to wit," etc.

The gist of this amended count, I think, is that the defendant agreed with the plaintiffs to advance to them the sum of $800 for the purpose of a settlement with their creditors, which sum the creditors had agreed with the plaintiffs to receive in discharge of the indebtedness, that the plaintiffs agreed that when the debts were discharged, and the attachments dissolved, the defendant should receive from them their stock of goods, as a pledge to secure the repayment of this $800 and the payment of the further sum of $200, and that although the plaintiffs were ready and willing to perform their part of the agreement the defendant failed to perform his part. This I think also is the substance of the agreement which the presiding justice understood that the plaintiffs contended that they had made, and had introduced evidence of at the trial. If the defendant undertook to pay the money to be advanced directly to the creditors, this was only as a means of insuring the proper application of the money, and the transaction intended was still of the nature of a loan to the plaintiffs. In his charge the presiding justice states the agreement as follows:

" And in this agreement or arrangement which they say they made, it is not claimed that Mr. Levenson took upon himself the responsibility of procuring that the creditors should be willing to settle for 33⅓ per cent. The arrangement with him went along upon the assumption that the creditors were willing; the plaintiffs claimed that the creditors had all been seen, and had

expressed their willingness, and that most of them, if not all, had signed a paper to that effect, which has been put in evidence ; and it is not claimed that Mr. Levenson undertook that the creditors should be willing to take $33\frac{1}{3}$ cents. He left that for the plaintiffs, but he undertook to pay them $33\frac{1}{3}$ per cent upon the assumption that they, the creditors, were and would be willing to take it. And so the plaintiffs, if they have a case against Mr. Levenson, have upon them the duty of satisfying you that, as a matter of fact, the creditors were willing to take the $33\frac{1}{3}$ per cent, and that no obstacle, serious obstacle, existed on that score, and to the settlement being made in the manner proposed. The plaintiffs say that was the condition of things : ' We found our creditors willing to assent, we had had the advice of our friends that that was a proper settlement to make. Mr. Levenson agreed with us to furnish the money, $800, to settle with the creditors, and thereupon take our property into his hands and hold it as security for the $800 which he advanced, for the $100 which he was to receive for his compensation, and for the $100 which was reckoned as probable or as to be incurred in the way of costs.' "

The trial apparently took a wide range, as evidence was introduced upon a count in tort for a conversion of the goods, but at the close of the evidence the court ruled that the plaintiffs could not recover upon the count for a conversion, and the case went to the jury upon the evidence introduced applicable to this amended count in contract.

The defendant testified that he bought the Woronoff mortgage for $50, and took an assignment of it to himself, and that he was informed by the plaintiffs and the mortgagee that it was a good mortgage. The plaintiffs testified that the defendant was informed that the mortgage was without consideration, was invalid, and was to be discharged. After the defendant procured the assignment of this mortgage to himself, he replevied the goods of the plaintiffs from the attaching officer, and on the trial of that action a verdict was rendered in favor of the defendant in replevin, and the plaintiff in replevin was ordered to return the goods, and, failing to do so, the officer brought suit against the plaintiff in replevin and the sureties on his bond, which action was pending when the case at bar was tried.

The ruling of the court at the trial of the present case upon the effect of this mortgage, and the assignment of it and of the action of replevin, was, I think, sufficiently favorable to the defendant. The ruling of the court upon the effect of the written assignment for the benefit of the creditors of the plaintiffs was I think correct. That written assignment, not having been executed by the creditors of the plaintiffs, never took effect.

The defendant never has had in his possession the plaintiffs' goods as a pledge under his agreement with them to advance the sum of $800. He got possession by the writ of replevin, but that was not a possession under the agreement. That possession by the defendant might perhaps have excused the plaintiffs from delivering possession to the defendant if he had lent or advanced the money to them as he agreed, but as it was a possession independent of the agreement, it has nothing to do with the measure of damages for the breach of the agreement. If the purchase of the mortgage and the replevying of the goods as assignee of the mortgage were a wrong to the plaintiffs, upon which I express no opinion, that is a cause of action distinct from the failure to lend or advance the money as agreed.

There was, I think, some evidence for the jury that the defendant made the agreement declared on in the count in contract as finally amended, and that he had broken that agreement, to the damage of the plaintiffs. What, then, is the measure of damages for the failure to advance the sum of $800, under the agreement declared on? The jury, under the instructions of the court, rendered their verdict on October 19, 1896, as follows: "The jury find for the plaintiffs, and assess damages in the sum of $1,500, and interest to date, $315.10, making $1,815.10." If the defendant had owed the plaintiffs $800, and had promised to pay it on a day certain, and had failed to do so, no matter how much the plaintiffs had suffered from this failure, they could recover only $800 and interest. *Loudon* v. *Taxing District*, 104 U. S. 771. *New Orleans Ins. Co.* v. *Piaggio*, 16 Wall. 378. For a breach of promise to lend or advance money when the plaintiffs have parted with nothing as the consideration for the promise, but only have made certain promises in return, the damages often are merely nominal. The reasonable cost of procuring another similar loan, or, if another loan has not been obtained, the value

of the contract to the plaintiffs, or what it would have cost them to procure a similar loan on the same terms, usually has been allowed as damages. This I think is the correct rule. *Prehn* v. *Royal Bank of Liverpool*, L. R. 5 Ex. 92. *Western Wagon & Property Co.* v. *West*, [1892] 1 Ch. 271, 277. *South African Territories* v. *Wallington*, [1897] 1 Q. B. 692. See *Greene* v. *Goddard*, 9 Met. 212, 232, 233 ; *Dodd* v. *Jones*, 137 Mass. 322 ; Sedgwick, Damages, (8th ed.) 622. Under this rule I think it is obvious that the damages never can be more than the amount agreed to be lent, with interest, and usually would be much less, often would be little or nothing. If A. has no property and owes debts to the amount of $100,000, which he can settle for cash at one cent on the dollar, and B. agrees to lend him $1,000 for this purpose, which sum A. agrees to pay back with interest, it seems to me unwarrantable to hold, as matter of law, that if B. fail to lend the money A. can recover of B. $99,000 for the breach. Even if it were held that the value of the indebtedness which A. could discharge with the $1,000, less what he had agreed to pay B. for the loan, is the measure of damages, it still seems to me unwarrantable to hold, as matter of law, that the value of the indebtedness is $100,000. In such a case, the fact that the indebtedness can be discharged by the payment of $1,000 tends strongly to show that the indebtedness is not worth more than one cent on the dollar.

The majority of the court having found that, under the charge of the presiding justice, the jury were permitted to find something for the value of goods, in addition to the difference between the amount of the debts of the plaintiffs and the $1,000 which the plaintiffs agreed to pay in discharge of the loan, have permitted the plaintiffs to remit from the principal sum of the verdict all in excess of the sum of $1,400, upon which sum, with interest from February 3, 1893, the plaintiffs, if they elect to remit, are to have judgment. It is said, in the opinion, of the difference between the amount of the plaintiffs' debts and $1,000, that " this difference was stated by the judge in his charge to be $1,400, and does not seem to have been in dispute." This difference has not been found by the jury in the answers to the questions put by the court. The presiding justice charged the jury as follows: " Now if under these simple instructions you

find the plaintiffs entitled to recover on the count in contract,
what are the damages? Well, the plaintiffs say that they were
in debt $2,400, that Mr. Levenson was to pay one third of it, by
which that would have been settled, and that they were to pay
him in addition to their debts $200; so that this settlement, if
it had been carried out by Mr. Levenson, would have cost them
ultimately $1,000, and by an outlay of $1,000 they would have
wiped out $2,400 of debts, so that there they lost $1,400. And
they say that they would have had back their property besides,
and they have lost whatever those goods were worth. I do not
see but that is a fair statement of the rule of damages, provided
the plaintiffs are entitled to recover, with an exception or two,
to which I am going to allude." The exception or two to which
he afterwards alludes relate to the damages for the value of goods.
It seems that there was evidence that Banewur, one of the plain-
tiffs, and one Waterman, had taken possession of some of the
goods, for the value of which, under the instructions of the pre-
siding justice, the defendant might not be liable.

Under this rule, the damages to be given for the loss of goods
were not damages for the conversion of goods, but damages for
a loss of goods occasioned by the breach of the contract. But
the goods were not lost to the plaintiffs by reason of the breach
of the contract; if they had not been replevied, they would ulti-
mately have been applied in discharge of the indebtedness, and
their value, if recovered, will still be so applied; and if this
value is not recovered, that is the result of the action of replevin,
and the action of replevin was not the natural and probable re-
sult of the breach of the contract, but was something indepen-
dent of the contract.

The exact amount of the indebtedness of the plaintiffs is no-
where stated in the exceptions. It is stated in the exceptions
"that on or about the 4th day of November, 1892, they (the
plaintiffs) had contracted an indebtedness amounting to about
$2,400, and that among their creditors they owed the defendant
for goods purchased of him." The writ is dated June 19, 1894,
and the verdict was rendered on October 19, 1896, and the in-
debtedness is referred to in the charge of the justice at the trial
as $2,400, or about $2,400, or "amounting as it is estimated to
$2,400." I doubt if there is any such exact determination of the

amount of damages found by the jury on account of the differ-
ence between $1,000 and the amount of the indebtedness, and of
the amount found by them for the value of goods lost by reason
of the breach of the contract, as would justify the court in allow-
ing the remittitur and then permitting the verdict to stand.    My
principal objection, however, is to the rule of damages given for
the breach of the contract, which seems to me erroneous, even
if all damages for the value of goods had been excluded.    I
think that the exceptions should be sustained.

Justices HOLMES and LATHROP concur in this dissent.